DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant/cross-appellee, Julia Charlton, and appellee/cross-appellant, Clifford Charlton, appeal from an order of the Wood County Court of Common Pleas, Domestic Relations Division granting their divorce and dividing their marital property. For the reasons that follow, the division of assets is affirmed in part and reversed in part, and the matter is remanded to the trial court for further proceedings consistent with this decision.
 {¶ 2} The parties were married on July 10, 1980, and had no children together. Mrs. Charlton filed her complaint for divorce on May 23, 2003. Mr. Charlton filed his answer and counterclaim for divorce on August 8, 2003. A final divorce hearing was held before a magistrate on February 18, 2004, and a magistrate's decision was filed on March 11, 2004.
 {¶ 3} On March 17, 2004, Mrs. Charlton filed objections to the magistrate's decision, arguing that the decision: (1) failed to properly divide marital property; (2) overlooked a Sky Bank bank account that was held in Mr. Charlton's name; (3) failed to include the reduction in the home mortgage in the amount of $10,600; (4) improperly found her Paine Webber account containing $12,071 to be marital property; and (5) improperly denied her request for attorney fees.
 {¶ 4} Mr. Charlton also filed objections to the magistrate's decision, arguing that the decision: (1) failed to include and distribute as a marital asset a certain checking account belonging to Mrs. Charlton; (2) contained an excessive award of property and spousal support to Mrs. Charlton; (3) improperly assessed interest payments in connection with the deferred property settlement; and (4) failed to address a request by Mr. Charlton that certain items of tangible property be returned to him.
 {¶ 5} Upon reviewing the objections of both parties, the trial judge issued an order instructing the magistrate to take into account in the entry dividing the marital property the additional asset of a Sky Bank bank account that was held in Mr. Charlton's name.
 {¶ 6} On February 9, 2005, the trial court issued a final decree of divorce, which relevantly provides:
 {¶ 7} "3. At the time of the marriage, Defendant owned certain real estate with an outstanding mortgage. Since the parties marriage, this mortgage has been reduced approximately $10,600.00 in principal due to the efforts or contributions of one or both of the parties.
 {¶ 8} "4. The date of the Final Hearing herein is the most equitable time to value the assets for distribution, or any values available closest to that date.
 {¶ 9} "5. Marital assets consist of the following: Defendant's PaineWebber House Account with a value of $153,461.15; Defendant's pick up truck with a value of $500.00; Defendant's 2000 GM car with a net value of $4,054; Defendant's IRA account with a value of $12,178.44; Plaintiff's PaineWebber House Account with an approximate value of $4,607.00; another PaineWebber House Account of the Plaintiff with a value of $12,071.01 (although this account originated from monies received from Plaintiff's step mother, it was payment to her for traveling to come and be with step mother in her last years, thereby being "earned" rather than a gift, and thereby being marital in total); and $8,000.00 in the joint bank account which was removed by the Plaintiff on or about the time of the filing of the Complaint herein.
 {¶ 10} "6. The Defendant has an account with Sky Bank [* * *], which is in the name of the Defendant; this account has an approximate balance of $3,639.00, at the time of the Final Hearing.
 {¶ 11} "7. Both the Plaintiff and Defendant are in a retired status living on their investments and social security.
 {¶ 12} "8. The Plaintiff receives over $400.00 monthly income, while her expenses exceed $800.00 monthly.
 {¶ 13} "9. The Defendant receives at least $1,800.00 income monthly while his basic expenses are less than that amount.
 {¶ 14} "10. The health, education, and age of each of the parties limits and/or restricts any employment by either of them at this time.
 {¶ 15} "11. An equitable division of the marital assets would be an equalization of the assets between the parties.
 {¶ 16} "12. A complete division of the marital assets equally at this time would create a hardship for the Defendant to maintain his current premarital residence and meet his monthly expenses.
 {¶ 17} "13. In consideration of all factors of the Ohio Revised Code Sec. 3105.08, it is appropriate for the Plaintiff to receive spousal support. The extent of the marriage, the health of the Plaintiff, the small retirement of the Plaintiff, Plaintiff's reasonable monthly expenses, and the income differential between the parties all support the award of spousal support to the Plaintiff from the Defendant.
 {¶ 18} "* * *
 {¶ 19} "IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED:
 {¶ 20} "1. Each party to be granted a divorce from the other on the grounds of incompatibility which has not been denied by the parties.
 {¶ 21} "2. The Plaintiff to receive as and for her own property, free and clear of any interest of the Defendant the following: her two PaineWebber House Accounts; the monies received by her from the joint checking account; and the IRA account currently in the Plaintiff's name. In addition she shall be awarded the sum of $15,894.97 to be taken from Defendant's PaineWebber house account, and rolled into one of her retirement accounts. The remaining $51,819.50 (which includes one-half of the value of the Sky Bank Account of the Defendant for the Plaintiff; see Magistrate's Order of October 14, 2004) is an equalization amount to the Plaintiff from the Defendant shall be in the form of a note and mortgage on the Defendant's real estate, at the legal rate of interest on the date of this Final Entry/Decree of Divorce, payable at the rate of $100.00 per month for thirty-five consecutive months following the journalization of the Final Judgment Entry of Divorce, and a final balloon payment of the remaining balance owed on the note on the thirty-sixth month after the journalization of the Judgment Entry or upon the date of death of either the Plaintiff or Defendant, which ever event occurs first.
 {¶ 22} "3. Plaintiff shall receive the personal property requested on her list, which the Defendant reasonably is able to locate.
 {¶ 23} "4. The Defendant shall pay as and for spousal support to the Plaintiff the sum of $350.00 per month commencing the month that the Final Judgment Entry of Divorce is journalized herein. * * *
 {¶ 24} "5. The Defendant to receive as an for his property, free and clear of any interest of the Plaintiff, the following: the balance in his PaineWebber House Account, less the award to Plaintiff, his pick up truck; his 2000 GM car, any of his personalty and all his premarital property, subject to the mortgage previously referred to.
 {¶ 25} "6. Each party to be responsible for their own attorney fees.
 {¶ 26} "* * *.
 {¶ 27} Mrs. Charlton filed her appeal to the final decree of divorce on March 9, 2005. Mr. Charlton filed his cross-appeal on March 18, 2005. Mrs. Charlton raises the following assignments of error:
 {¶ 28} I. "THE TRIAL COURT COMMITTED AN ABUSE OF DISCRETION BY AWARDING APPELLEE NEARLY TWO TIMES THE AMOUNT OF APPELLANT IN VIOLATION OF 3105.171 AND THE COURT'S FINDING AT ¶ 11 OF THE FINAL DECREE OF DIVORCE IN THE DISTRIBUTION OF MARITAL PROPERTY, WHERE THE COURT STATES: "AN EQUITABLE DIVISION OF THE MARITAL ASSETS WOULD BE AN EQUALIZATION OF THE ASSETS BETWEEN THE PARTIES."
 {¶ 29} II. "THE TRIAL COURT COMMITTED AN ABUSE OF DISCRETION IN FAILING TO INCLUDE DEFENDANT'S SKY BANK CHECKING ACCOUNT WITH A BALANCE OF $12,178.44 (A MARITAL ASSET) IN THE FINAL DIVISION OF PROPERTY."
 {¶ 30} III. "THE TRIAL COURT COMMITTED AN ABUSE OF DISCRETION IN FAILING TO CALCULATE THE REDUCTION IN THE HOME MORTGAGE DURING THE MARRIAGE IN THE AMOUNT OF $10,600 IN THEIR DIVISION OF MARITAL PROPERTY."
 {¶ 31} IV. "THE TRIAL COURT COMMITTED AN ABUSE OF DISCRETION IN FINDING PLAINTIFF'S PAINEWEBBER ACCOUNT TO BE A MARITAL ASSET AS IT WAS A GIFT AND NOT EARNED INCOME."
 {¶ 32} V. "THE TRIAL COURT COMMITTED AN ABUSE OF DISCRETION IN DENYING PLAINTIFF'S REQUEST FOR ATTORNEY'S FEES."
 {¶ 33} Mr. Charlton raises the following cross-assignment of error:
 {¶ 34} "THE TRIAL COURT ERRED IN ITS AWARD OF AN EXCESSIVE AND INEQUITABLE AMOUNT OF PROPERTY TO PLAINTIFFA-PPELLANT/CROSS-APPELLEE, TOGETHER WITH INTEREST UPON DEFERRED PAYMENTS, AND ALSO IN AWARDING SPOUSAL SUPPORT TO PLAINTIFF-APPELLANT/CROSS-APPELLEE WHICH IS EXCESSIVE IN AMOUNT AND DURATION."
 {¶ 35} In this appeal, the parties challenge the trial court's division of property, both as a whole and with respect to specific individual assets. We find that, in this case, the best way to evaluate the challenges to the division of property is, first, to determine the merits of the parties' more specific concerns, and then — with those conclusions in mind — to determine the integrity of the award as a whole.
 {¶ 36} We begin with an examination of Mrs. Charlton's claim, contained in her second assignment of error, that the trial court erred in failing to include Mr. Charlton's "Sky Bank checking account with a balance of $12,178.44" in the final division of property. We initially note that the account belonging to Mr. Charlton and containing $12,178.44 that was not included in the final division of property is not a Sky Bank checking account, but rather is a USB IRA account. Mrs. Charlton is correct, however, to the extent that she is claiming that this asset (although listed as a marital asset in the final decree of divorce) was never mentioned in the distribution of property.
 {¶ 37} Although the court enjoys wide latitude in determining how to distribute property, the law is clear that the court must, in fact, distribute the property. R.C. 3105.171(B); Noll v.Noll (2000), 9th Dist. No. 98CA007042. "A divorce decree that does not dispose of all the property * * * is insufficient and incomplete." Kette v. Kette (Nov. 12, 1997), 9th Dist. No. 18288, unreported citing Rowe v. Rowe (1990),69 Ohio App.3d 607, 613. We find that the trial court, in failing to distribute the IRA account containing $12,178.44, failed to dispose of all of the property and, therefore, abused its discretion. Accordingly, Mrs. Charlton's second assignment of error is found well-taken.
 {¶ 38} Mr. Charlton notes in his response to Mrs. Charlton's second assignment of error that the trial court also neglected to specifically distribute funds contained in a certain Sky Bank account that was in Mrs. Charlton's name.
 {¶ 39} Mr. Charlton concedes in his response that the money in this account was the separate property of Mrs. Charlton. Despite this concession, R.C. 3105.171(B) requires that the trial court determine whether property is marital or separate property. R.C. 3105.171(B); see also, Bucalo v. Bucalo, 9th Dist. No. 05CA0011-M, 2005-Ohio-6319, at ¶ 11. The trial court's failure to classify the funds as either one or the other constituted an abuse of discretion.
 {¶ 40} We note with respect to this particular account that, although Mr. Charlton claims it had a balance of $5,722.10, the evidence contained in the record does not support this statement of the amount. Upon our review of the record, we find that the balance on the Sky Bank account that was in Mrs. Charlton's name and that was not considered by the trial court was in the amount of $3,003.68, and not $5,722.10. Notwithstanding the error in the amount claimed, Mr. Charlton's point that the court abused its discretion in failing to distribute the funds contained in this account is well-taken.[1]
 {¶ 41} Mrs. Charlton asserts in her third assignment of error yet another claim that the trial court erred in failing to distribute property. Here, she states that it was error for the trial court to fail to equitably divide the residence and to fail to include a $10,600 reduction in a home mortgage debt that occurred during the marriage.
 {¶ 42} Evidence contained in the record clearly demonstrates that during the marriage Mr. Charlton owned real estate that he had purchased prior to the marriage but which remained subject to an outstanding mortgage. R.C. 3105.171(A)(6)(a)(ii) includes in its definition of "separate property" any real property or interest in real property that was acquired by one spouse prior to the date of the marriage. Applying the law to the facts in this case, it seems beyond cavil that the real estate in question should have been classified as Mr. Charlton's separate property. The trial court, in failing to make any specific finding with respect to the classification of this property plainly abused its discretion.[2]
 {¶ 43} We next examine whether the equity derived from a $10,600 reduction in mortgage debt should have been separately classified as either marital or separate property. The $10,600 figure represents an approximate amount by which the mortgage principal on the property was reduced during the time period between July 1980, when the marriage began, and December 1993, when the mortgage was paid off. As indicated above, in the final decree of divorce, the trial court found that the $10,600 mortgage debt reduction occurred as a result of "the efforts or contributions of one or both of the parties."
 {¶ 44} Under R.C. 3105.171(A)(3)(a)(iii), marital property generally includes all appreciation on separate property due to the monetary contribution of either or both of the spouses that occurred during the marriage. (Emphasis added.) And, as this court recently stated in Forbis v. Forbis, 6th Dist. Nos. WD-04-056, WE-04-063, 2005-Ohio-5881, "Any reduction in the amount of a mortgage during the marriage by payment of marital funds contributes to the equity in the property and becomes marital property." Id., at ¶ 62, citing Ray v. Ray, 9th Dist. No. 03CA0026-M, 2003-Ohio-6323, at ¶ 8; Charles v. Charles
(Jan. 22, 1997), 9th Dist. No. 96CA006396. Thus, in this case, where it cannot seriously be disputed that marital funds were used to pay down the mortgage, the resulting $10,600 mortgage debt reduction should be classified as marital property. The trial court, in failing to make this classification, and in failing to distribute the $10,600, abused its discretion. SeeBucalo, supra, at ¶ 11; Kette, supra.
 {¶ 45} For all of the foregoing reasons, Mrs. Charlton's third assignment of error is found well-taken.
 {¶ 46} We next consider Mrs. Charlton's fourth assignment of error, wherein she argues that the trial court abused its discretion in finding her PaineWebber account to be a marital asset. As indicated above, the trial court found that Mrs. Charlton had two PaineWebber accounts, and that both of them were marital property. Specifically, the trial court found that one of those accounts had an approximate value of $4,607, and that the other had a value of $12,071.01.
 {¶ 47} We begin by noting that the trial court erred with respect to its valuation of the second account. Review of the record reveals that the $12,071.01 figure represents the sum of the value of the first account, which is listed on the account statement as $4,670.97, and the value of the second account, which is listed on the account statement as $7,397.95. At trial, both Mr. and Mrs. Charlton agreed that the funds in the account with the $4,670.97 balance were marital property, and that, between the two accounts, the only funds that were in dispute were those in the account having the $7,397.95 balance. Mrs. Charlton argued that the disputed funds were her separate property, and Mr. Charlton argued that they were marital property.
 {¶ 48} Pursuant to R.C. 3105.171(A)(6)(a)(vii), "separate property" includes "[a]ny gift of real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincingevidence to have been given to only one spouse." See also,Osborn v. Osborn, 11th Dist. No. 2003-T-0111, at ¶ 33.
 {¶ 49} At trial, Mrs. Charlton testified that she received $7,000 from her stepmother, Lois Morgan, as a gift, and that, since its receipt, the money had always been kept separate in the PaineWebber account. Mr. Charlton disputed his wife's characterization of the transfer, and testified that Morgan, who lived in Florida, had paid the money to Mrs. Charlton in order to cover Mrs. Charlton's travel expenses for coming to see Morgan on multiple occasions over and around a period during which Morgan had lost a friend. Mr. Charlton testified that he knew Morgan's purpose in giving the money because he had heard Morgan say at the time the check was presented that the money was payment for travel expenses.[3]
 {¶ 50} The trial court found in its final entry of divorce that "although this account [containing the disputed amount] originated from monies received from Plaintiff's step mother, it was payment to her for traveling to come and be with step mother in her last years, thereby being "earned" rather than a gift, and thereby being marital in total."
 {¶ 51} Appellate review of a trial court's classification of property as marital or separate is based on whether the determination is supported by the manifest weight of the evidence. James v. James (1995), 101 Ohio App.3d 668, 684. The trial court's findings will be upheld where the record contains some competent, credible evidence to support those findings.Fletcher v. Fletcher (1994), 68 Ohio St.3d 464, 468. In the instant case, we find that there was ample competent, credible evidence to support the trial court's finding that the $7,000 transfer was not a gift, but rather was earned, and, as such, was a marital asset.
 {¶ 52} Accordingly, Mrs. Charlton's fourth assignment of error concerning classification of the property is found not well-taken. However, because the trial court erred in its valuation of that property, we remand for recalculation of that amount consistent with this court's decision.
 {¶ 53} We next address Mrs. Charlton's first and fifth assignments of error, together with Mr. Charlton's cross-assignment of error, wherein challenges are made both to the equitableness of the division of assets and to the spousal support award. Under R.C. 3105.171(C)(1), a trial court is required to make an equal division of marital property unless an equal division would be inequitable, in which case the court must divide the property in the manner it determines is equitable. See, Young v. Young (2001), 146 Ohio App.3d 34.
 {¶ 54} Under R.C. 3105.171(D), each spouse is to receive his or her own separate property. See Tilmant v. Tilmant (Nov. 7, 2005), 5th Dist. No. 2004CA000024, 2005-Ohio-5939, at ¶ 19. However, a trial court may make a distributive award of one spouse's separate property either "to facilitate, effectuate, or supplement a division of marital property," R.C. 3105.171(E)(1), or "in lieu of a division of marital property in order to achieve equity between the spouses, if the court determines that a division of the marital property in kind or in money would be impractical or burdensome." R.C. 3105.171(E)(2). "Distributive award" is defined at R.C. 3105.171(A)(1) as "any payment or payments, in real or personal property, that are payable in a lump sum over time, in fixed amounts, that are made from separate property or income, and that are not made from marital property and do not constitute payments of spousal support, as defined in section 3105.18 of the revised code."
 {¶ 55} In determining a division of marital property, the trial court must consider the factors set forth at R.C.3105.171(F). Id. Those factors include:
 {¶ 56} "(1) The duration of the marriage;
 {¶ 57} "(2) The assets and liabilities of the spouses;
 {¶ 58} "(3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;
 {¶ 59} "(4) The liquidity of the property to be distributed;
 {¶ 60} "(5) The economic desirability of retaining intact an asset or an interest in an asset;
 {¶ 61} "(6) The tax consequences of the property division upon the respective awards to be made to each spouse;
 {¶ 62} "(7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;
 {¶ 63} "(8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;
 {¶ 64} "(9) Any other factor that the court expressly finds to be relevant and equitable."
 {¶ 65} In addition, a trial court must make written findings of fact that support a determination that the marital property has been equitably divided and shall specify the dates it used in determining the meaning of "during the marriage." R.C.3105.171(G).
 {¶ 66} The trial court has broad discretion in deciding what division of property is equitable. Cherry v. Cherry (1981),66 Ohio St.2d 348, paragraph two of the syllabus. Appellate review of a trial court's division of property is limited to a determination of whether the trial court abused that discretion.Wilson v. Wilson (July 24, 1996), 9th Dist. No. 95CA0089.
 {¶ 67} In the instant case, the trial court found that "[a]n equitable division of the marital assets would be an equalization of the assets between the parties," and that "[a] complete division of the marital assets equally at this time would create a hardship for the Defendant to maintain his current premarital residence and meet his monthly expenses." Unfortunately, as a result of the above-mentioned errors and omissions regarding the classification and valuation of various assets, we find it impossible to review the trial court's award of marital property to determine whether it is equal, or even equitable.
 {¶ 68} We face a similar problem with respect to our review of the award for spousal support. R.C. 3105.18(C)(1) sets forth factors that the court is to consider in determining whether, and in what amount, spousal support is appropriate. Among those factors are the relative assets and liabilities of the parties. R.C. 3105.18(C)(1)(i). Because attorney fees are awarded as spousal support, the R.C. 3105.18(C)(1)(i) factors must also be considered in rendering that determination.
 {¶ 69} We find that, in this case, where we are remanding to the trial court for further findings on property valuation, classification, and division, it is impossible for us to determine whether the amount of spousal support, including attorney fees, that was ordered by the trial court is appropriate.
 {¶ 70} For all of the foregoing reasons, we find Mrs. Charlton's first and fifth assignments of error, and Mr. Charlton's cross-assignment of error, are all well-taken.
 {¶ 71} This case is remanded for: (1) distribution of the IRA account in Mr. Charlton's name containing $12,178.44; (2) classification and distribution of the Sky Bank account in Mrs. Charlton's name containing $3,003.68; (3) classification and distribution of the real property; (4) classification and distribution of $10,600 in mortgage debt reduction; (5) recalculation of value of Paine Webber accounts that are in Mrs. Charlton's name; (6) consideration of the factors set out at R.C.3105.171(F), together with findings in support of the division of marital property, as required by R.C. 3105.171(G); (7) division of the marital property in accordance with the various provisions set forth at R.C. 3105.171; and (8) consideration of the factors set forth at R.C. 3105.18(C)(1) for determination of whether, and in what amount, spousal support, including payment of attorney fees, is appropriate.
 {¶ 72} Appellant and appellee are each ordered to pay one-half of the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Wood County.
JUDGMENT AFFIRMED, IN PART, AND REVERSED, IN PART.
CHARLTON V. CHARLTON WD-05-017
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Pietrykowski, Skow and Singer, P.J., Concur.
[1] Among the items listed by the trial court in its distribution to Mrs. Charlton is and "IRA account currently in the Plaintiff's name." The court is unable to find evidence of any such account in the record. Perhaps, in making this distribution, the trial court was actually referring to Mrs. Charlton's Sky Bank account. But because the trial court failed to mention the value of the IRA account, we cannot presume this to have been the case.
[2] We note that Mrs. Charlton repeatedly asserts in error that the trial court found the marital residence to be marital property.
[3] Mrs. Charlton argues that the trial court should have excluded this statement on grounds that it is hearsay. We are not persuaded by this argument. Under Evid.R. 803(3), the statement is properly admitted as a statement indicative of Morgan's then-existing state of mind or intent. See also, Buckles v.Buckles (1988), 46 Ohio App.3d 102, 114.